**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHEN D. WHITELEY, | ) | CASE NO. 4:24-CV-00016-CEF |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I. Introduction

Plaintiff, Stephen D. Whiteley ("Whiteley" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On December 9, 2022, Claimant filed an application for DIB, alleging a disability onset date of May 12, 2022. The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ").  (ECF No. 7, PageID #: 119).  On August 24, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (*Id.*, PageID #: 58-85).  On September 19,

1

2023, the ALJ issued a written decision finding Claimant was not disabled.  (*Id.*, PageID #: 40-57).  The ALJ's decision became final on November 14, 2023, when the Appeals Council declined further review.  (*Id.*, PageID #: 27-29).

On January 4, 2024, Claimant filed his Complaint to challenge the Commissioner's final decision.  (ECF No. 1).  The parties have completed briefing in this case. (ECF Nos. 8, 10, 11). Claimant asserts the following assignments of error:

1. The ALJ erred at Step Three of the Sequential Evaluation when he failed to find that Plaintiff satisfied the criteria of Listings 12.04 and 12.15.

2. The ALJ erred and his decision was not supported by substantial evidence when he failed to properly evaluate the opinions of the treating and examining sources in accordance with 20 CFR 404.1520c.

3. The ALJ erroneously failed to comply with Social Security Ruling 16-3p when evaluating Plaintiff's psychological symptoms.

(ECF No. 8 at 1).

### III. Background

#### A.  Relevant Hearing Testimony

The ALJ summarized Claimant's hearing testimony as follows:

The claimant reported experiencing significant mood disturbances with unprovoked irritability.  The claimant endorsed experiencing panic attacks as well as persistent hallucinations, delusions, and suspicions. The claimant also endorsed experiencing suicidal ideation. The claimant stated that he could become violent. His mental health conditions made it difficult for him to adapt to a work setting. He reported having problems adapting to stressful circumstances and maintaining effective work and social relationships. The claimant testified that he was unable to get along with others, including people with whom he was familiar and with strangers. He alleged that he got along poorly with authority figures. The claimant testified that being around others was an exacerbating factor for his PTSD. The claimant described having difficulty completing tasks as he could not pay attention for more than two minutes. The claimant testified that he had difficulty focusing and remaining motivated. The claimant stated that he tolerated stress and changes in routine poorly. The claimant testified that his PTSD caused him to experience nightmares, panic attacks, and flashbacks. (Testimony; 4E).

(ECF No. 7, PageID #: 48, Tr. at 22).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

The claimant sought treatment for depression and suicidal ideation in June 2022. (1F/32-33). In July 2022, the claimant reported experiencing paranoid delusions; feeling that "everyone is out to get him." His interpersonal conflicts had led to him being terminated from his job. He endorsed experiencing a mental breakdown. The claimant also described being depressed and anxious. The claimant also reported experiencing mood swings that vacillated between depression and anger. He indicated that he did not engage in regular hygiene, grooming and bathing only once weekly. Contrary to the claimant's complaints, when examined, the claimant was appropriately dressed and kempt. The claimant was cooperative with the treatment provider. He presented a euthymic mood with a congruent affect. The claimant's cognition was intact. His thought process was linear, and his thought content was organized. The claimant's thought content was free of homicidal and suicidal ideation. The claimant did not appear to be responding to internal stimuli. The claimant's insight and judgment were good. (1F/19-21, 29-31). The claimant was treated pharmacologically. (1/12).

The claimant reported that his symptoms had improved with treatment in August 2022. The claimant continued to experience suicidal ideation, but he denied experiencing recent anger, agitation, or verbal outbursts. The claimant denied any psychotic symptoms. When examined, the claimant presented with a euthymic mood and congruent affect. The treatment provider noted that the claimant's thought content was organized without observed hallucinations, or overt suicidal ideation or homicidal ideation. The claimant's thought content was linear. The claimant's cognition was intact. His insight and judgment were good. He appeared for treatment adequately groomed and dressed. He was cooperative with the treatment provider. (1F/11-14).

In September 2022, the claimant reported experiencing some sleep disturbance and fleeting paranoia. Nevertheless, the claimant's thought content remained linear with organized thought content. The claimant's insight and judgment were good. He remained cooperative with the treatment provider. The claimant's cognition was intact. He was cooperative and appeared for treatment adequately groomed and dressed. The claimant's mood was euthymic with a congruent affect. (1F/5-7).

When treated in December 2022, the claimant reported that his depression was intermittent. He denied recent periods of anger, agitation, and verbal outbursts. The claimant reported experiencing only minimal paranoia and denied experiencing hallucinations. (2F/32). Upon examination, the claimant presented

3

with a euthymic mood and a congruent affect. The claimant's insight and judgment were good. He appeared for treatment adequately groomed and dressed. The claimant was cooperative with the treatment provider. The claimant's thought processes were linear with organized thought content. The claimant's cognition was intact. (2F/32-34).

The claimant reported experiencing increased agitation with others, particularly those he did not know in March 2023. The claimant also reported experiencing increased suspiciousness and paranoia. However, the claimant continued to appear for treatment with a euthymic mood and congruent affect. The claimant's thought process was linear with organized thought content. The claimant's insight and judgment were good. His cognition was intact. The claimant attended treatment adequately groomed and dressed. The claimant was cooperative with the treatment provider. (4F/45-47). The claimant's functioning was unchanged in April 2023. (4F/39).

In May 2023 and July 2023, the claimant continued to present a euthymic mood with a congruent affect despite reports of experiencing a poor mood. The claimant's cognition was intact. The claimant retained linear thought processes and organized thought content. The claimant appeared for treatment with adequate grooming and dress. The claimant was cooperative with the treatment provider. The claimant's insight and judgment remained good. (4F/24, 31).

(ECF No. 7, PageID #: 48-50, Tr. at 22-24).

### C. Opinion Evidence

#### 1. Jena Palmer, nurse practitioner, January 2023

On January 25, 2023, Nurse Practitioner Jena Palmer completed a mental impairment questionnaire regarding Whiteley's mental limitations and impairments. (*Id.*, PageID #: 418-19, Ex. 3F). Nurse Palmer had been treating Whiteley every one-to-three months since June 21, 2022 for his post-traumatic-stress-disorder and depression. (*Id.*, PageID #: 418, Tr. at 392). Nurse Palmer opined that Whiteley was "seriously limited, but not precluded" in his abilities to sustain concentration and persistence; understand and remember; and adapt. (*Id.*, PageID #: 418-19, Tr. at 392-93). Nurse Palmer opined that Whiteley was "unable to meet competitive standards" in his social interactions. (*Id.*, PageID #: 419, Tr. at 393).

#### 2. State Agency Opinions

State agency reviewing psychologist Katherine Fernandez, Psy D, reviewed Whiteley's records and provided an opinion on December 30, 2022, as to his mental limitations. (*Id.*, PageID #: 90-4, Ex. 2A). Dr. Fernandez opined that Whiteley is moderately limited in his abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage himself, and mildly limited in his ability to understand, remember, or apply information. (ECF No. 7, PageID #: 90, Tr. at 64). Dr. Fernandez further explained Whiteley's limitations: "Sustainability is compromised, concentration and pace variable. He can maintain attention, make simple decisions, and adequately adhere to a schedule for a position with no strict time pressures or production quotas." (*Id.*, PageID #: 92, Tr. at 66). "Due to [claimant's] psychological impairments, he would interact best where not required to interact extensively with others. He is able to interact on a superficial basis infrequently." (*Id.*). "[Claimant] can adapt to a setting in which duties are routine and predictable.  Changes should be well-explained and introduced gradually. The claimant's ability to handle stress and pressure in the workplace is reduced but adequate to handle the stresses of routine work that does not involve timed tasks or rate quotas. He will do best with a repetitive routine.  Changes should be announced in advance when possible." (*Id.*, PageID #: 93, Tr. at 67).

State agency reviewing psychologist Kristen Haskins, Psy D, examined Whiteley's records on reconsideration and provided her opinion on January 25, 2023. (*Id.*, PageID #: 99-102, Ex. 4A).  Dr. Haskin's confirmed Dr. Fernandez's opinion regarding Whiteley's mental limitations. (*Id.*, PageID #: 99, Tr. at 73). Dr. Haskin's explanations also echoed those of Dr. Fernandez, adding that "Claimant can complete a variety of short cycle tasks in a setting that does not have fast pace demand and where can work away from the distractions of others[.]" (*Id.*, PageID #: 101-02, Tr. at 75-6).

IV.     **The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: Depressive Disorder and Post-Traumatic Stress Disorder ("PTSD") (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple routine tasks and make simple work-related decisions. The claimant can occasionally interact with supervisors, coworkers, and the general public. The claimant can tolerate few changes in a routine work setting.

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 12, 2022, through the date of this decision (20 CFR 404.1520(g)).

**V. Law & Analysis**

   **A. Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535,

538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C.  Discussion

Whiteley raises three issues on appeal: "1. The ALJ erred at Step Three of the Sequential Evaluation when [they] failed to find that Plaintiff satisfied the criteria of Listings 12.04 and 12.15. 2. The ALJ erred and [their] decision was not supported by substantial evidence when

[they] failed to properly evaluate the opinions of the treating and examining sources in accordance with 20 CFR 404.1520c. 3. The ALJ erroneously failed to comply with Social Security Ruling 16-3p when evaluating Plaintiff's psychological symptoms." (ECF No. 8 at 1).

### 1. The ALJ did not err in finding that Claimant failed to meet a listing.

Claimant argues that the ALJ erred in failing to find that he satisfied the criteria of Listings 12.04 and/or 12.15. To meet a listing, the claimant "must satisfy all of the [listing's] criteria." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment." *Id.* If the ALJ's listing finding is supported by substantial evidence based on the record as a whole the Court will defer to the ALJ's finding, "[e]ven if the record could support an opposite conclusion." *Id.* at *4. Moreover, if the ALJ's listing finding is not supported by substantial evidence, the error is harmless if the claimant cannot show that his impairments met or medically equaled a listing. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

The relevant listings address depressive, bipolar, and related disorders (12.04) and trauma- and stressor-related disorders (12.15). 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(1). Listings 12.04 and 12.15 "have three paragraphs, designated A, B, and C" and a claimant's mental disorder "must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C[.] *Id.* at § 12.00(A)(2). Here, Claimant's argument involves paragraph B, which is the same for Listing 12.04 and 12.15.

To meet the paragraph B criteria, a claimant must show either an extreme limitation of one, or marked limitation of two, of the following areas of her mental functioning ability: understand, remember, or apply information; interact with others; concentrate, persist, or

maintain pace; and adapt or manage oneself.  *Id.* at §§ 12.04, 12.15.  A marked limitation exists when the claimant's ability to function independently, appropriately, effectively, and on a sustained basis is "seriously limited" whereas a moderate limitation exists when the claimant's ability is "fair."  *Id.* at § 12.00(F)(2)(c)-(d).

The ALJ set forth [their] findings with respect to the paragraph B criteria, citing to Claimant's testimony, December 15, 2022 function report, and mental health medical records:

> In understanding, remembering or applying information, the claimant has no limitation.  The claimant did not report experiencing significant memory problems to his treatment provider. The claimant's treatment provider consistently noted that the claimant's cognition was intact. Furthermore, the claimant engaged in activities that required functional memory and understanding. The claimant was able to manage his own funds and manage his medication regimen. The claimant watched television for entertainment. The claimant was able to help care for his grandchildren. Finally, the claimant was an adequate historian during the hearing. (Testimony; 4E; 1F; 2F: 4F).

> In interacting with others, the claimant has a moderate limitation. The claimant testified that he was unable to get along with others, including people with whom he was familiar and with strangers. He alleged that he got along poorly with authority figures. The claimant testified that being around others was an exacerbating factor for his PTSD. Nevertheless, when treated, the claimant was routinely cooperative with the treatment provider. In addition, the claimant was able to engage in activities that required greater social tolerance than alleged. The claimant was able to cohabitate with his aunt and interact with his son. The claimant was able to attend a gym regularly. He could shop in brick and mortar stores. The claimant was able to interact with and help care for his grandchildren. Finally, the claimant displayed adequate social functioning during the hearing. (Testimony; 4E; 1F; 2F: 4F).

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation.  The claimant reported in his function report and testified at the hearing that he experienced poor concentration and limited motivation due to his mental health conditions. The claimant's flashbacks, anxiety, and mood swings could interfere with his ability to remain on task and to concentrate. However, the claimant's treatment provider noted that the claimant's cognition was intact throughout the treatment period. Furthermore, the claimant engaged in activities that required greater concentration and task persistence than alleged. The claimant was able to manage his own funds and medication regimen. The claimant regularly attended a gym for exercise. The claimant was able to drive.

Finally, the claimant did not require significant redirection during the hearing. (Testimony; 4E; 1F; 2F: 4F).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant stated that he tolerated stress and changes in routine poorly. The claimant testified that his PTSD caused him to experience nightmares, panic attacks, and flashbacks. These symptoms could limit the claimant's ability to adapt to new situations and to manage himself. Nevertheless, the claimant's treatment provider noted that the claimant's judgment and insight were consistently good. The claimant retained linear thought processes with organized thought content. Furthermore, the claimant was able to engage in activities that required a greater degree of adaptation and self-management skills than described. The claimant was able to drive. He could complete household tasks such as cooking, cleaning, washing dishes, doing laundry, and yardwork. The claimant was able to care for his pet cat. He could help care for his grandchildren. Finally, the claimant tolerated the stress of the hearing adequately. (Testimony; 4E; 1F; 2F: 4F).

(ECF No. 7, PageID #: 46-7, Tr. at 20-21).

Claimant argues that the "ALJ's conclusions that [he] had none or moderate limitations in each of the 'B' criteria was outside [the ALJ's] 'zone of choice'". (ECF No. 8 at 11). Claimant argues that the ALJ "failed to consider all of [Whiteley's] symptoms as noted and described in the evidence set forth above" and that the "failure to consider the totality of the evidence in this matter constituted harmful and reversible error." (*Id*.).  Whitely argues that the evidence shows that he had marked limitations in three of the paragraph B criteria: interacting with others, concentrating and persisting or maintaining pace, and adapting or managing oneself. (*Id.* at 9). The Commissioner argues that the ALJ carefully considered Whiteley's medical history, the opinions of the State agency psychologists, the opinion of Nurse Palmer, and all relevant evidence before reasonably concluding that Whiteley did not meet or equal a listing. (ECF No. 10 at 10-14). This Court may not weigh evidence and/or decide questions of credibility. *Gray v. Comm'r of Soc. Sec.*, No. 1:21-CV-0881, 2022 WL 17361659, at *4 (N.D. Ohio Dec. 1, 2022) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Instead, "[a] reviewing court must

affirm the ALJ's conclusions unless he or she failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." *Id*. (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)).

The ALJ was required to resolve potential conflicts between Whiteley's testimony and the balance of the record. *Walters*, 127 F.3d at 531. The ALJ's decision complied with this requirement. For example, even though Whiteley testified he was unable to get along with others, including people with whom he was familiar and with strangers, and that doing so exacerbates his PTSD, the ALJ noted that the evidence supports "greater social tolerance than alleged." (ECF No. 7, PageID #: 46, Tr. at 20). The ALJ explained that Whiteley was "routinely cooperative with the treatment provider;" was able to live with his aunt and to interact with his son, attend a gym on a regular basis, shop in-person, and interact with and care for his grandchildren; and that he displayed "adequate social functioning" during the hearing. These facts substantially support the ALJ's conclusion that Whiteley's ability to interact with others was "fair" rather than "seriously limited." Whiteley also testified that he was having a hard time concentrating and focusing. (*Id.,* PageID #: 74, Tr. at 48). However, the ALJ explained that treatment notes indicate that Whiteley's cognition was intact throughout the treatment period and that Whiteley "engaged in activities that required greater concentration and task persistence than alleged." (ECF No. 7, PageID #: 46, Tr. at 20). The ALJ explained that Whiteley was able to manage his own funds and medication regimen, exercise at a gym, drive, and was able to participate in the hearing without significant redirection. (*Id.*). Finally, despite Whiteley's testimony that his flashbacks, nightmares, recurring thoughts about his past, and paranoia limited his ability to adapt to new situations and to manage himself, the ALJ explained that his treatment notes indicated that his judgment and insight were consistently good and the evidence

demonstrated that he was able to engage in activities that required a greater degree of adaptation and self-management skills than described including driving, cooking, cleaning, washing dishes, doing laundry, and yardwork, and caring for his pets and grandchildren. These facts support the ALJ's findings at step three of the sequential analysis. The ALJ's findings were also consistent with the state agency psychological consultants, who also opined that Whiteley had mild to moderate limitations each of the four categories of the B criteria. (*See* ECF No. 7, PageID #: 90, 99).

Whiteley states that the ALJ "failed to consider all of Plaintiff's symptoms" when they found that he did not meet a listing. (ECF No. 8 at 11). Whiteley points to 1) his medical records where he subjectively described his symptoms, including his paranoia (*see* ECF No. 8 at 9-11 (citing Tr. at 262, 285, 305, 340, 347, 382, 416, 439)); 2) his hearing testimony, during which he described his symptoms (*id*. at 10 (citing Tr. at 50-51)); and 3) the disability benefits questionnaire (DBQ) completed by clinical and forensic psychologist Thomas M. Eberle, Ph.D at the Department of Veteran's Affairs (*id*. at 9-11 (citing Tr. at 305, 307, 308)). However, the ALJ considered the evidence from each of these sources (*see* ECF No. 7, PageID #: 46, Tr. at 20 (citing Testimony; 4E; 1F; 2F: 4F). This Court may not weigh evidence and/or decide questions of credibility. *Gray*, 2022 WL 17361659, at *4 (citing *Garner*, 745 F.2d at 387). Instead, "[a] reviewing court must affirm the ALJ's conclusions unless he or she failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." *Id*. (citing *Longworth.*, 402 F.3d at 595). Whiteley does not direct the Court to any evidence directly contradicting the ALJ's conclusion. Instead, he asks this Court to reweigh the evidence and to reach a conclusion that his limitations were more than moderate. But even if substantial evidence supports Whiteley's disability claim, this Court cannot overturn the ALJ's decision "so long as

substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Because the ALJ cited substantial evidence supporting their conclusion, their decision must be affirmed. *Kyle v. Commr. of Social Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833.

**2. The ALJ properly considered the medical opinions.**

Next, Whiteley argues that the ALJ erred in their evaluation of the opinion of Nurse Palmer and failed to consider the evidence and restrictions opined by Veteran's Affairs ("VA") psychologist, Dr. Eberle. (ECF No. 8 at 12-16).

For claims filed after March 27, 2017, the regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [they] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in § 404.1520c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." *Id.* at § 404.1520c(c). The ALJ is required to explain how they considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id.* at § 404.1520c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

13

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c).

### A.     Nurse Jena Palmer

Here, the ALJ provided the following discussion of Nurse Palmer's opinion:

> In a medical opinion dated January 2023, Jena Palmer, nurse practitioner, opined that the claimant was seriously limited, but no precluded from engaged in activities consistent with sustained concentration, persistence, understanding, memory, and adaptation. The claimant was unable to meet competitive standards with social interaction. (3F). The undersigned finds this opinion to be unpersuasive. This opinion was not supported by Nurse Palmer's treatment records. Nurse Palmer consistently noted that the claimant was cooperative despite his mental health symptoms. The claimant's cognition was intact, and he retained linear thought processes. The claimant's thought content was organized. The claimant maintained good insight and judgment. The opinion was also inconsistent with the record. The claimant engaged in activities which demonstrated that his social limitations were not as severe as described. The claimant was able to cohabitate with his aunt. The claimant could interact with his son. The claimant also helped care for his grandchildren. Furthermore, the claimant was able to interact with non-family members. The claimant regularly attended the gym for exercise. The claimant could shop in brick and mortar stores. (Testimony; 4E; 1F: 2F; 4F).

(ECF No. 7, PageID #: 50, Tr. at 24)

Claimant argues that the ALJ's erred in finding that Nurse Palmer's opinion was not supported by her treatment records of Claimant and that the ALJ's "stated rationale" for not including additional mental limitations in the RFC was "contrary to the evidence" and "not supported by substantial evidence." (ECF No. 8 at 15). The Commissioner responds that substantial evidence supports the ALJ's analysis and the Court should affirm the ALJ's decision. (ECF No. 10 at 19).[1]

---

[1] Whiteley also states that the ALJ was required to give controlling weight to Nurse Palmer's opinion as a treating source. (ECF No. 8 at 16 (citing *Battaglia v. Comm'r of Soc. Sec.*, No. 1:22cv1459, 2023 WL 3900356, at *15 (N.D. Ohio June 8, 2023)). *Battaglia* is inapt here because the plaintiff there filed their application before 20 C.F.R. § 404.1520b took effect.

The ALJ's discussion of Nurse Palmer's opinion illustrates that they considered the supportability and consistency factors. As to supportability, which addresses the supporting medical evidence and explanations for the opinion, the ALJ noted that the opinion was "not supported by Nurse Palmer's treatment records" and pointed out examples of those inconsistencies. (ECF No. 7, PageID #: 50). Concerning consistency, the ALJ highlighted portions of the record that showed Whiteley was able to engage in activities such as cohabitating with his aunt, shopping in brick and mortar stores, and interacting with both family and non-family members. (*Id.*). The ALJ's explanation clearly outlined their explanation for finding the Nurse Palmer's opinion was not supported by or consistent with the record.

Although Claimant points to evidence that he claims demonstrates that he is more limited than determined by the ALJ, he does not direct the court to any evidence that contradicts the ALJ's decision or that the ALJ failed to consider. It is not for the Court to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Because the ALJ addressed both supportability and consistency, they complied with the regulations in finding Nurse Palmer's opinion unpersuasive and substantial evidence supports that conclusion. The Court must defer to the ALJ's decision, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

### B. Dr. Thomas Eberle

Whiteley also argues that the ALJ failed to consider the evidence and restrictions opined by Dr. Thomas Eberle, a VA examining psychologist. (ECF No. 8 at 14-15). The Commissioner

argues that the ALJ considered the evidence in the Department of Veteran's Affairs medical records, which included the July 2022 examination and findings by Dr. Eberle. (ECF No. 10 at 19).

On July 27, 2022, clinical and forensic psychologist Dr. Thomas M. Eberle examined Whiteley pursuant to a VA 21-2507 Compensation and Pension examination request. (ECF No. 7, PageID #: 331-34, Ex. 1F). Dr. Eberle diagnosed Whiteley with PTSD, major depressive disorder, and cannabis dependence and found that Whiteley has a "[t]otal occupational and social impairment[.]" (*Id.*, PageID #: 331-32, Tr. at 305-6). As a result, Whiteley was found "100% disabled." (*See id.*, PageID #: 482, Ex. 5F).

"[I]n claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by another governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504. The regulation, 20 C.F.R. § 404.1520b(c), which applies here, states that certain evidence, including "decisions by other governmental agencies," is "inherently neither valuable nor persuasive." *Id.* § 404.1520b(c)(1). An ALJ will not provide any analysis in his or her decision about how such evidence was considered. *Id.* § 404.1520b(c). The VA is specifically considered a "governmental agency." 20 C.F.R. § 404.1504. Thus, the ALJ was not required to analyze or weigh the VA's disability decision in this case.

Whiteley acknowledges that the ALJ did not need to address the VA's finding that Whiteley was 100% disabled but argues that the ALJ failed to consider Dr. Eberle's opinion. (ECF No. 8 at 15). This is not accurate. The ALJ explicitly acknowledged the VA records, which included the questionnaire completed by Dr. Eberle, and stated that they considered them. (ECF No. 7, PageID #: 49-52 (citing to Exs. 1F, 5F)). The ALJ explained that although they

16

"considered the underlying evidence discussed in the Department of Veteran's Affairs findings with respect to the extent said evidence affects the analysis of the claimant's claim for disability benefits under the Act. . . [t]he determination of entitlement to benefits under the Act is reserved to the Commissioner." (*Id.*, PageID #: 50 (citing 20 CFR 404.1527(d) and 20 CFR 416.927(d))). The ALJ was not required to provide any analysis regarding Dr. Eberle's opinion

The ALJ therefore complied with the regulations by considering the evidence but not providing any analysis about Dr. Eberle's opinion or the VA's determination that he was 100% disabled.

Overall, the ALJ complied with the regulations in considering the medical opinions and substantial evidence supports the ALJ's decision.

### 3.  Social Security Ruling 16-3p

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8.

The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ found that while the objective evidence established severe impairments, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 7, PageID #: 48). The ALJ further explained:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the record. The claimant testified that he was unable to get along with others, including people with whom he was familiar and with strangers. He alleged that he got along poorly with

authority figures. The claimant testified that being around others was an exacerbating factor for his PTSD. Nevertheless, when treated, the claimant was routinely cooperative with the treatment provider. In addition, the claimant was able to engage in activities that required greater social tolerance than alleged. The claimant was able to cohabitate with his aunt and interact with his son. The claimant was able to attend a gym regularly. He could shop in brick and mortar stores. The claimant was able to interact with and help care for his grandchildren. The claimant displayed adequate social functioning during the hearing. (Testimony; 4E; 1F; 2F: 4F).

The claimant reported in his function report and testified at the hearing that he experienced poor concentration and limited motivation due to his mental health conditions. The claimant's flashbacks, anxiety, and mood swings could interfere with his ability to remain on task and to concentrate. However, the claimant's treatment provider noted that the claimant's cognition was intact throughout the treatment period. Furthermore, the claimant engaged in activities that required greater concentration and task persistence than alleged. The claimant was able to manage his own funds and medication regimen. The claimant regularly attended a gym for exercise. The claimant was able to drive. The claimant did not require significant redirection during the hearing. (Testimony; 4E; 1F; 2F: 4F).

The claimant testified that his PTSD caused him to experience nightmares, panic attacks, and flashbacks. These symptoms could limit the claimant's ability to adapt to new situations and to manage himself. Nevertheless, the claimant's treatment provider noted that the claimant's judgment and insight were consistently good. The claimant retained linear thought processes with organized thought content. Furthermore, the claimant was able to engage in activities that required a greater degree of adaptation and self-management skills than described. The claimant was able to drive. He could complete household tasks such as cooking, cleaning, washing dishes, doing laundry, and yardwork. The claimant was able to care for his pet cat. He could help care for his grandchildren. The claimant tolerated the stress of the hearing adequately. (Testimony; 4E; 1F; 2F: 4F).

(*Id.*, PageID #: 51). The ALJ did not wholly discount Claimant's subjective complaints but rather explained how his symptoms were accommodated in the RFC by limiting him to simple routine tasks and making simple work-related decisions, occasional interaction with others, and few changes in a routine work setting. Specifically, the ALJ noted that

The claimant reported in his function report and testified at the hearing that he experienced poor concentration and limited motivation due to his mental health conditions. The claimant's flashbacks, anxiety, and mood swings could interfere

> with his ability to remain on task and to concentrate. These symptoms supported
> limiting the task and decision making complexity that the claimant could
> complete. The claimant testified that he was unable to get along with others,
> including people with whom he was familiar and with strangers. He alleged that
> he got along poorly with authority figures. The claimant testified that being
> around others was an exacerbating factor for his PTSD. The claimant's social
> functioning symptoms supported limiting the claimant's interaction with
> coworkers, supervisors, and the public. The claimant stated that he tolerated
> stress and changes in routine poorly. The claimant testified that his PTSD caused
> him to experience nightmares, panic attacks, and flashbacks. These symptoms
> supported limiting the claimant to workplaces with few changes. (Testimony; 4E;
> 1F; 2F: 4F).

(*Id.*, PageID #: 51-52).

In their summary of Whiteley's treatment history, the ALJ noted that Whiteley had reported suicidal ideation in August 2022, but in December 2022 reported that his depression was intermittent, denied recent period of anger, agitation, verbal outbursts, and experienced only minimal paranoia. (*Id.*, PageID #: 49). The ALJ noted that in early 2023 Whiteley reported increased agitation with others, suspiciousness, and paranoia, but that he appeared for treatment "with a euthymic mood and congruent affect." (*Id.*). Overall, the ALJ's decision shows that they discussed relevant factors under SSR 16-3p, including Claimant's medications and other treatment that provided relief to Claimant. Accordingly, it is hard to interpret Claimant's argument that greater limitations were warranted as anything more than a request to reweigh the evidence in his favor. But where, as here, substantial evidence supports the ALJ's RFC determination, the Court must defer to it, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright*, 321 F.3d at 614.

Because substantial evidence supports the RFC finding, the ALJ's decision should be affirmed.

**VI. Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's

Statement of Errors and AFFIRM the Commissioner's decision.

Dated: June 17, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after being served with a copy of this document. Failure to file
objections within the specified time may forfeit the right to appeal the District Court's order. *See
Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).